aEE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOREST CITY ENTERPRISES, INC. and LEXINGTON INSURANCE COMPANY, ) ) ) ) Plaintiffs, ) ) v. ) ) BRIDGESTREET CORPORATE ) HOUSING, LLC, ) ) Defendant. ) ) ———————————————————— ) BRIDGESTREET CORPORATE ) HOUSING, LLC, ) ) Third Party Plaintiff, ) ) v. ) ) SPENCER DINKINS and FORD MOTOR ) COMPANY ) ) Third Party Defendants. ) | No. 10 C 1210<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Forest City Enterprises, Inc., owner of Sky 55 Apartments, and Lexington Insurance Company, Forest City's insurer, brought suit for damage caused by a fire against Bridgestreet Corporate Housing, LLC, the lessee of the unit where the fire originated, seeking to recover on a breach-of-contract theory. Bridgestreet filed a third party complaint against Spencer Dinkins, the occupant of the unit at the time of the fire, and against Ford Motor Company, Dinkins' employer. Pending before the Court are two motions for summary judgment – one by Bridgestreet against Forest City and Lexington, and the other by Dinkins and Ford against Forest City.

## BACKGROUND

The relevant facts are straightforward and not in dispute. Plaintiff, Forest City, owned and operated Sky 55 Apartments. On November 16, 2006, Forest City and Bridgestreet entered into a lease ("the Lease Agreement") whereby Bridgestreet agreed to rent Apartment 2910 of Sky 55 Apartments. In November 2007, Dinkins and Ford entered into a "Reservation Confirmation" with Bridgestreet, which provided for Dinkins' use of Apartment 2910 for a six-month period, beginning in December 2007.

On March 21, 2008, Dinkins was cooking in the kitchen when he fell asleep. A kitchen fire started, which caused the sprinkler system to activate. The fire resulted in damage to Apartment 2910 and to the common areas and other units at Sky 55 Apartments.[1] Lexington claims damages in excess of $75,000 as subrogee of Forest City. Forest City claims additional, uninsured damages in the amount of $250,000.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994).

---

[1] According to the parties' briefs, much of the damage from the fire was the result of the water released by the sprinkler system, as opposed to damage from flames or smoke. Because the parties assign no legal significance to this fact, all damage in this case will be referred as fire damage.

2

The parties agree that Illinois law applies in this case. Under Illinois law, leases are subject to the law of contract. *Towne Realty, Inc. v. Shaffer*, 331 Ill.App.3d 531, 536 (4th Dist. 2002) (*Shaffer*). "Leases should be construed as a whole to ascertain the parties' intent and the words used should be given their plain and generally accepted meaning." *Id.* (internal citations omitted). Any ambiguity in the lease is to be resolved in favor of the lessee and against the lessor. *Id.*

## ANALYSIS

### *Bridgestreet's Motion for Summary Judgment*

Bridgestreet argues that, under Illinois law, it is not liable for any fire damage to Sky 55 Apartments, even if the fire was the result of its own negligence.[2] As a fall-back position, Bridgestreet argues that its liability should be limited to damage sustained to Apartment 2910 itself as opposed to other areas of Sky 55 Apartments. Plaintiffs take the position that Bridgestreet is liable for all fire damages to Sky 55 Apartments because the fire was the result of Bridgestreet's negligence.

Illinois law on the question of whether a lessee may be held liable for negligently caused fire damage to the lessor's property is set out in *Dix Mutual Insurance Company v. LaFramboise*, 149 Ill. 2d 314, 319 (1992) (*Dix*). The Illinois Supreme Court noted that while "a tenant is generally liable for fire damage caused to the leased premises by his negligence, if the parties intended to exculpate the tenant from negligently caused fire damage, their intent will be enforced." *Dix*, 149 Ill. 2d at 319. The intent of the parties is determined by considering the

---

[2]Plaintiffs and Bridgestreet assume that Dinkins' negligence is properly attributed to Bridgestreet.

3

entire lease. *Id.* at 320. "In Illinois, courts must look to the lease 'as a whole' and the spirit of the agreement between the parties rather than search for an express provision in the lease." *Id.* Thus, in this case, the entire Lease Agreement must be examined to determine whether the parties intended that Bridgestreet would be held liable for damages resulting from fire that was caused by its own negligence.

The Lease Agreement provides that Bridgestreet (the "Resident") agrees to lease from Forest City (the "Landlord") Apartment 2910 (the "*Premises*") at Sky 55 Apartments, (the "*Property*"). A reading of the Lease Agreement in its entirety reveals that the parties did contemplate the possibility that damage might result from a negligently caused fire. Paragraph 17 of the Lease Agreement states, in part:

> If damage to the Premises from fire or casualty is a result of Resident's negligence, recklessness, or intentional or deliberate action, Resident will be responsible for payment of the repair and damages to restore the *Premises* to its original condition. Failure to pay such amount constitutes material breach or default of the Lease and shall entitle Landlord to exercise all remedies available under state/local law. (emphasis added.)

Considering this language, Bridgestreet cannot prevail on its argument that it is not liable for any of the damage caused by the fire. Paragraph 17 clearly states that in the event of a fire caused by the Resident's negligence, the Resident will be liable for damage to the Premises, i.e., Apartment 2910. While Bridgestreet argues that consideration of the Lease Agreement as a whole leads to the opposite conclusion, it has no explanation for the above-quoted language, which is directly contrary to Bridgestreet's argument. The most Bridgestreet can do is simply admit, in a footnote, that it exists. Nothing in the remainder of the Lease Agreement creates any doubt that this language means what it says – that Bridgestreet is liable for fire damage to

4

*Apartment 2910* if the fire was the result of Bridgestreet's own negligence. Indeed, recognition of the plain meaning of this language is most likely the reason for Bridgestreet's fall-back position, that it is liable for damage to Apartment 2910 but not to other areas of Sky 55 Apartments.

Plaintiffs claim that Bridgestreet is liable for all damages to Sky 55 Apartments that resulted from the fire in Apartment 2910. Like Bridgestreet, Plaintiffs argue that the Lease Agreement, read as a whole, supports their position. The starting point, however, must be Paragraph 17, in which the parties clearly contemplated that Bridgestreet's negligence might lead to fire damage.

Plaintiffs read the above-cited language of Paragraph 17 to hold Bridgestreet liable for "negligently caused fire damage." But, as discussed above, that is not what the paragraph provides. Paragraph 17 states that the Resident is responsible for damage to the *Premises* that is negligently caused by fire. As noted above, the Lease Agreement defines the "Premises" as Apartment 2910. By contrast, Sky 55 Apartments as a whole is referred to in the Lease Agreement as the "Property." To accept Plaintiffs' argument would be to rewrite Paragraph 17, inserting "Property" in place of "Premises." This, the Court may not do. *See Shaffer*, 331 Ill.App.3d at 536 (court cannot rewrite a lease to provide a better bargain for one side). Furthermore, assuming that Paragraph 17 is ambiguous in whether it is referring to damage to the Premises or to the Property (it is not), the ambiguity would have to be resolved in favor of Bridgestreet, the lessee. *Id.* In short, Paragraph 17 must be read to mean what it says: Bridgestreet is responsible for fire damage to Apartment 2910 resulting from its own negligence.

5

Thus, Plaintiffs cannot rely on this portion of Paragraph 17 to show that Bridgestreet is liable for damage to other areas of Sky 55 Apartments.[3]

However, it is possible that Bridgestreet could be liable for such damage if the remainder of the Lease Agreement demonstrates that the parties intended that result. As mentioned, the Lease Agreement must be read as a whole, and any one paragraph is not necessarily dispositive. But Paragraph 17 makes any such reading highly unlikely. If the remainder of the Lease Agreement demonstrated that the parties intended that Bridgestreet would be responsible for all fire damage resulting from its own negligence, the cited portion of Paragraph 17 would be unnecessary and redundant. Apartment 2910 is part of Sky 55 Apartments. If the parties intended Bridgestreet to be responsible for negligently caused fire damage to all of Sky 55 Apartments, there would be no reason to provide in Paragraph 17 that Bridgestreet was also responsible for negligently caused fire damage to Apartment 2910.

Similarly, it is highly unlikely that the parties would determine Bridgestreet's liability for negligently caused fire damage anywhere else in the Lease Agreement. If the parties had intended to provide that Bridgestreet was liable for all negligently caused fire damage to Sky 55 Apartments, they could have done so by replacing "Premises" with "Property" in Paragraph 17. That they did not is compelling evidence that the parties intended to limit Bridgestreet's liability for negligently caused fire damage to damage to the 2910 Apartment.

---

[3]A separate section of Paragraph 17 provides "Any damage(s) to glass on the Premises *or in the common area* caused by the Resident, Occupant(s) or Resident's guests shall be paid by Resident" (emphasis added). Thus, the parties clearly knew how to assign liability for damages to parts of the Property other than the Premises.

Plaintiffs' arguments that other provisions of the Lease Agreement provide a basis for Bridgestreet's liability for the damage to areas of Sky 55 Apartments other than Apartment 2910 are unconvincing. Plaintiffs cite Paragraph 21, titled "Landlord's Liability," which "recommends" that the Resident secure renter's insurance, as a manifestation that the parties intended that Bridgestreet insure itself against liability for fire damage. But this sentence of the Lease Agreement is sandwiched between other language listing the things for which the Landlord will not be liable. The obvious intent of the paragraph is to limit the Landlord's liability for loss of the Resident's property or for the Resident's liability to third parties. Furthermore, it is highly unlikely that Forest City intended Bridgestreet to obtain "renter's insurance" that would cover damage to other parts of Sky 55 Apartments. Such damage could potentially include complete loss of the building by fire. If Forest City had truly intended to rely on Bridgestreet's "renter's insurance" to cover the complete loss of the building, it follows that it would have done more than "recommend" such insurance. Thus, Paragraph 21 lends no support to Plaintiffs' position.

Plaintiffs next cite other portions of Paragraph 17. Plaintiffs argue, "the tenant had an express duty under the lease to use the appliances, including the stove, in a safe and reasonable manner" and that the tenant was "on notice" that "failure to use the stove in such a manner was a breach of the lease agreement allowing the landlord to recover damages stemming from the breach." Pls.' Br. 9. Unfortunately for Plaintiffs, Paragraph 17 says no such thing. The paragraph does state that "Resident agrees to," (among many other things), "use plumbing, electrical, sanitary, heating, ventilating, air conditioning facilities and appliances in a safe and reasonable manner . . . ." However, there is no mention that any such behavior is a "breach of the lease agreement." Several sentences later, Paragraph 17 does state, "Violation of this

7

provision is a material breach or default of this Lease and shall entitle the Landlord to exercise all remedies available under state/local law." However, the "provision" referred to in this sentence is clearly the preceding sentence, which bars the Resident from tampering with smoke detectors. It is clear from the intervening text in the paragraph (for example, a provision that the Resident shall pay for any broken glass) that the two sentences Plaintiffs rely on, cited above, are unrelated. There is nothing in the cited language that demonstrates that the parties understood the Resident to be liable for fire damage to other parts of Sky 55 Apartments.

Finally, Plaintiffs argue that the "yield-back" clause in Paragraph 17 does not exempt the Resident from liability for fire damage. This provision provides, "Upon termination or expiration of the Lease, Resident agrees to surrender the Premises to the Landlord in the same condition as it was delivered at the commencement of the tenancy, less ordinary wear and tear." Plaintiffs' argument is that the clause does not say "less ordinary wear and tear and fire damage." Again, the argument is not convincing. Nothing in this language reasonably indicates that the parties understood Bridgestreet to be liable for fire damage to other parts of Sky 55 Apartments, which might potentially include a complete loss of the building. Moreover, the clause speaks of yielding back the *Premises*. As already noted, *Premises* (Apartment 2910) and *Property* (Sky 55 Apartments) are not the same in this lease.

In conclusion, examining the Lease Agreement as a whole, it is apparent that the parties intended that Bridgestreet's liability for negligently caused fire damage would extend only to the 2910 Apartment. Bridgestreet's summary judgment motion is therefore granted in part. Bridgestreet's liability shall be limited to damages to Apartment 2910.

*Dinkins and Ford's Motion for Summary Judgment*

As set out above, Third-Party Defendants Dinkins and Ford have also moved for summary judgment. It is somewhat puzzling, however, that Dinkins and Ford moved for summary judgment against Plaintiffs, Forest City and Lexington, rather than against Third-Party Plaintiff, Bridgestreet. It is Bridgestreet, not Plaintiffs, that brought Dinkins and Ford into this suit and has claims pending against them. Furthermore, Bridgestreet's claims against Dinkins and Ford are not limited to breach of contract; they include claims for negligence, indemnification and contribution. None of this has been addressed in Third-Party Defendants' motion. Nor does the motion address the liability of Dinkins or Ford under the Reservation Confirmation, the document that apparently defines the contractual relationship between Third-Party Defendants and Bridgestreet. Rather, the motion essentially parallels Bridgestreet's motion against Plaintiffs.

Bridgestreet remains potentially liable to Plaintiffs for damage to Apartment 2910. Third-Party Defendants have not shown that they will not, in turn, be liable to Bridgestreet for that damage. Therefore, Third-Party Defendants' motion is denied.

## CONCLUSION

Bridgestreet's Motion for Summary Judgment is granted in part and denied in part. Bridgestreet's liability for the fire shall be limited to damage to Apartment 2910. Dinkins and Ford's Motion for Summary Judgment is denied.

Dated: January 20, 2011

JOHN W. DARRAH
United States District Court Judge